**FILED**
**Sep 23, 2019**
**09:14 AM(ET)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT CHATTANOOGA

| | |
|---|---|
| Dale Woodrum, | ) Docket No.: 2018-01-0604 |
|     Employee, | ) |
| v. | ) |
| Morgan Olson Corp., | ) State File No.: 61349-2016 |
|     Employer, | ) |
| And | ) |
| XL Specialty Insurance, | ) Judge Thomas Wyatt |
|     Carrier. | ) |
| | ) |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

This case came before the Court on September 16, 2019, for an Expedited Hearing. The principal issues were whether Dale Woodrum's injury arose primarily out of and in the course and scope of her employment and whether Morgan Olson Corp. provided a panel of physicians. For the reasons below, the Court holds that Ms. Woodrum established her claim to additional medical benefits.

### History of Claim

On February 8, 2018, Ms. Woodrum's supervisor at Morgan Olson assigned her a job requiring manual assembly of rear doors for UPS delivery trucks. Ms. Woodrum testified she was required to assemble forty-eight doors per day and that the job was physically difficult because she had to lift the doors and carry them to a rack. She stated she weighed 117 pounds on the date of injury, but until she was injured on the job, she was able to perform the assigned duties.

Ms. Woodrum testified her injury occurred when she tried to catch doors that began falling when she attempted to place a door onto the rack. She tried to catch the doors by grabbing and balancing them on her thighs. She could not maintain this posture due to the doors' weight, and they pulled her down to a crouched position. She remained partially pinned under the doors until co-workers assisted her.

1

Ms. Woodrum stated that she experienced severe pain radiating from her right foot, up her leg, through her entire spine, and into her right shoulder immediately upon standing up after the injury.[1] However, she stayed on the door-assembly job until February 21, when her pain prevented her from continuing.

Ms. Woodrum testified she called her supervisor, Ryan Moore, early on that day to tell him she would not be able to work. She did not reach him and decided to seek treatment at Lakeway Urgent Care, a facility where Morgan Olson management brought her for treatment of an earlier work-related injury. Ms. Woodrum stated that Lakeway accepted her as a patient after its receptionist called Morgan Olson to obtain authorization to treat her under workers' compensation.

Greg Montooth, Morgan Olson's safety director, provided a different account of how Ms. Woodrum received treatment at Lakeway. He testified that she called him on February 21 to report back pain and request treatment. He informed Ms. Woodrum of the providers on Morgan Olson's panel, told her to select one, and informed her she could later sign the form to document her choice. Mr. Montooth asserted that Ms. Woodrum selected Lakeway, and he then informed Lakeway by phone that Ms. Woodrum was on the way.

Mr. Montooth also testified that Ms. Woodrum did not tell him or, to his knowledge, anyone else until February 21 that she was hurt on the job. Morgan Olson additionally introduced written statements from Ms. Woodrum's co-workers that they had not actually seen her become injured.

The Lakeway records document that it accepted Ms. Woodrum as a workers' compensation patient.[2] She was first seen by a non-physician provider and later spoke to Dr. John Sanabria. The provider recorded Ms. Woodrum's report of constant, worsening back pain with numbness and tingling since an injury at Morgan Olson, which Ms. Woodrum described as a line of doors falling and pulling her forward. The provider found diffuse tenderness in her right thoracic muscles, left cervical muscles, and lumbar muscles bilaterally. He diagnosed a "sprain of unspecified parts of [the] thorax."[3]

The provider released Ms. Woodrum to return to work without restrictions and stated, "[n]o further follow up should be required unless [her pain was] unresolved in 1-2 weeks." At that visit, Dr. Sanabria told Ms. Woodrum that x-rays were "negative for any acute injury," and her strain was "not a serious issue."

---

[1] The parties disputed whether Ms. Woodrum provided notice of her injury the day it occurred, but the evidence demonstrated that she gave verbal notice of her injury within the fifteen-day statutory period. *See* Tenn. Code Ann. § 50-6-201(a)(1) (2018).

[2] It coded her visit for billing purposes "WC New."

[3] The provider authored the records, and Dr. Sanabria electronically approved them.

2

However, Dr. Sanabria was concerned about an incidental x-ray finding that might represent a mass in Ms. Woodrum's abdomen. He recommended that she see her primary care physician, Dr. Patel, to investigate it. He stated that, "[b]ecause of this unrelated personal issue, [Ms. Woodrum] will not return to work until cleared by her PCP."

Ms. Woodrum saw Dr. Patel that same day.[4] His record documents that she reported both back and abdominal pain and related the back pain to her work injury. On February 26, he indicated the abdominal work-up was negative. Dr. Patel diagnosed back pain and later wrote on September 11 that he had not returned her to work because her "WC care had not been completed" because of her move to Kentucky.

Ms. Woodrum testified that she has continuously suffered pain from her work injury and has been disabled from working since February 21, 2018. She said that financial problems from her inability to work resulted in the loss of her automobile and forced her to move back to Kentucky to live with family.

Ms. Woodrum introduced records documenting treatment in Kentucky. She went to a clinic beginning June 20, 2018, complaining of multiple symptoms including depression, fatigue and back pain. On examination, Ms. Woodrum was assessed with thoracic and lumbar tenderness and muscle spasm in the left side of her back. Those problems continued at a July 3 examination, where testing revealed mild degenerative changes in her lumbar and thoracic spine. The provider added a diagnosis of fibromyalgia to previous diagnoses of chronic muscular pain and weakness.

At the Expedited Hearing, Ms. Woodrum argued Morgan Olson failed to provide a panel after she reported her injury. Morgan Olson countered that Ms. Woodrum had not established that her injury arose primarily out of her employment and was not entitled to additional benefits. It also argued that it complied with the law by authorizing her to see Dr. Sanabria.

**Findings of Fact and Conclusions of Law**

The Court is guided by two fundamental principles of workers' compensation law. First, the employer shall furnish reasonable and necessary treatment of an employee's work injury with the employee selecting a treating physician from a panel of physicians. *See* Tenn. Code Ann. §§ 50-6-204(a)(1)(A) and (a)(3)(A)(i). Second, the injured employee must establish that her injury or the need for treatment arose primarily out of the employment. *Panzarella v. Amazon.com, Inc.,* No. E2017-01135-SC-R3-WC, 2018 Tenn. LEXIS 244, at *9 (Tenn. Workers' Comp. Panel May 16, 2018). Because this is an Expedited Hearing, Ms. Woodrum must show she will likely prevail at a hearing on the

---

[4] The Court sustained hearsay objections to several documents submitted with Dr. Patel's records because those documents were not signed by a provider.

3

merits on all essential elements of her claim. *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Regarding causation, Ms. Woodrum testified emphatically and consistently that she suffered an injury while trying to prevent doors from falling off a rack. In response, Morgan Olson offered written statements of employees stating that they did not see her get hurt. The Court observed Ms. Woodrum's testimony and finds her credible. In addition, the medical records contain consistent histories of Ms. Woodrum attributing her back pain to the incident at Morgan Olson.

The Court also notes the Lakeway providers diagnosed a muscle-related back injury when they saw Ms. Woodrum on February 21 and advised her that she might require follow-up treatment if her symptoms did not resolve. Dr. Patel corroborated Ms. Woodrum's consistent history that her back pain began at Morgan Olson, and he later diagnosed her with back pain after testing ruled out other potential causes. The Kentucky providers' records document Ms. Woodrum reported her ongoing back pain was related to "when she pulled her back while 'building UPS trucks,'" and they found objective indications of tenderness and spasm in her back muscles when they examined her.

In *Lewis v. Merry Maid,* 2016 TN Wrk. Comp. App. Bd. LEXIS 19, at *8 (Apr. 20, 2016), the Appeals Board affirmed an award of medical benefits when the employee's testimony and corroborating medical evidence supported her "allegation that she began suffering severe back pain while working" for the employer. The same is true here. Considering Ms. Woodrum's credible testimony and the corroborating medical records, the Court holds she met her burden of proof that she would likely prevail at a hearing on the merits that she sustained a back injury on February 8, 2018, while working for Morgan Olson.

The Court next considers whether Ms. Woodrum presented sufficient medical proof of the work-relatedness of her back injury. *See* Tenn. Code Ann. § 50-6-102(14)(A). Although the Lakeway providers did not specifically address the causation of the injury to Ms. Woodrum's back, they discussed the injury in a manner indicating that they considered it to be work-related. For instance:

- The records state that the Lakeway providers knew that Ms. Woodrum sought treatment of a workers' compensation injury. Further, Mr. Montooth testified that he called Lakeway to alert them she was coming for treatment of a work injury.
- The Lakeway providers documented that Ms. Woodrum reported that she sustained a work injury at Morgan Olson on February 8.
- In documenting Dr. Sanabria's interaction with Ms. Woodrum, the Lakewood report states, "[r]egarding *the work related strain,* radiographs are negative for any acute injury." (Emphasis added.)

4

- Conversely, the Lakeway report addresses the non-work-relatedness of the possible mass shown on x-ray, stating, "[b]ecause of this *unrelated personal issue*, [Ms. Woodrum] will not return to work until cleared by her PCP." (Emphasis added.)

The Workers' Compensation Appeals Board ruled in *Panzarella v. Amazon.com, Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *14 (May 15, 2017), that "a physician may render an opinion that meets the legal standard espoused in section 50-6-102(14) without couching the opinion in a rigid recitation of the statutory definition." The Board further explained that, "[w]hat is necessary . . . is sufficient proof from which the trier of fact can conclude that the statutory requirements of an injury as defined . . . are satisfied." *Id.*

Based on the above and the Appeals Board's ruling in *Panzarella*, the Court holds that Ms. Woodrum is likely to prevail at a hearing on the merits in establishing that Dr. Sanabria gave or agreed with the opinion that her back injury arose primarily out of and in the course and scope of her employment. For that reason, the Court holds Ms. Woodrum is entitled to ongoing treatment of her back injury.

The Court now turns to the logistics of the treatment to which Ms. Woodrum is entitled. Her argument that she is entitled to benefits because she did not sign a panel misses the point. Instead, the primary issue is whether Morgan Olson offered her a panel as required by law. The Court finds it did. Specifically, the Court accepts Mr. Montooth's testimony that he verbally informed Ms. Woodrum of the providers on Morgan Olson's panel, and armed with that information, Ms. Woodrum selected Lakeway. Ms. Woodrum's testimony that she decided to seek treatment at Lakeway for another reason does not significantly rebut Mr. Montooth's testimony. In the end, she obtained authorized treatment at Lakeway.

Based on the totality of the evidence, the Court holds that Ms. Woodrum may return to Lakeway for treatment of her back injury. *However, because she has moved to Kentucky, Morgan Olson shall provide her a panel of physicians in Ms. Woodrum's community of residence upon request.* If this is Ms. Woodrum's decision, she shall make this request in writing to counsel.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Woodrum is entitled to return to Lakeway for follow-up treatment of her work-related back injury.

2. Should Ms. Woodrum desire a panel of physicians in Kentucky, she shall request that by writing Morgan Olson's counsel (see email address in Certificate of

Service) as soon as is practicable. Morgan Olson shall provide a panel within thirty days from the date Mr. Morris receives a written request.

3. This case is set for a Status Hearing on **January 6, 2020, at 10:00 a.m. Eastern Time.** You must call (615) 741-3061 or toll-free at (855) 747-1721 to participate in the Status Hearing. Failure to call might result in a determination of the issues without your further participation.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.** For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED September 23, 2019.**

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Affidavit of Dale M. Woodrum
2. Letter from Morgan Olson
3. Lakeway Urgent Care records
4. Internal Medicine Associates (Dr. Patel) records. (The Court sustained a hearsay objection on the records of Dr. Patel that were not signed by a provider.)
5. Taylor Regional Hospital records
6. One Cross Health Clinic records
7. Russell County Hospital (identification only.) The Court sustained a hearsay objection because the records were not signed by a provider.
8. Fibromyalgia article (identification only.) The Court sustained a hearsay objection because no foundation was laid that the article constituted a learned treatise.

6

9. Unum Short-Term Disability claim form
10. Hand-written notes of Ms. Woodrum (identification only.) The Court sustained a lack-of-relevance objection.
11. Cover of Morgan Olson sales pamphlet (identification only.) The Court sustained a lack-of-relevance objection.
12. Photographs of Ms. Woodrum's work station
13. Statement of Eric Moore
14. Statement of Chris Levey (identification only.) The Court sustained a hearsay objection.
15. Statement of Cynthia Greene

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Employer's additions to Dispute Certification Notice
4. Request for Expedited Hearing
5. Employee Position Statement
6. Employer Witness List
7. Employer Motion to Extend Time to File Prehearing Pleadings
8. Order Extending Time to File Pleadings
9. Notice of Expedited Hearing
10. Employer Prehearing Statement

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on September 23, 2019.

| Name | Certified & U.S. Mail | Email | Service sent to: |
|---|---|---|---|
| Dale Woodrum Employee | | X | Godisgood2266@gmail.com 1075 Damron Creek Road Russell Springs, KY 42642 |
| Brent Morris Employer's Attorney | | X | bmorris@wimberlylawson.com |

**Penny Shrum, Court Clerk**
Wc.courtclerk@tn.gov

w/permission

7



<u>Expedited Hearing Order Right to Appeal:</u>

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# EXPEDITED HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

**Employee** _____

v.

**Employer** _____

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information

**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

## List of Parties

**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)
**Appellee (Opposing Party):** _____ At Hearing: ☐ Employer ☐ Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*** Attach an additional sheet for each additional Appellee ***

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this
Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties
and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules
of Board of Workers' Compensation Appeals on this the _____ day of _____, 20 ___

[Signature of appellant or attorney for appellant] _____



### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

LB-1108 (REV 11/15)                                                      RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental  $ _____ per month

| | | | | | |
|---|---|---|---|---|---|
| Groceries | $ _____ per month | Telephone | $ _____ per month |
| Electricity | $ _____ per month | School Supplies | $ _____ per month |
| Water | $ _____ per month | Clothing | $ _____ per month |
| Gas | $ _____ per month | Child Care | $ _____ per month |
| Transportation | $ _____ per month | Child Support | $ _____ per month |
| Car | $ _____ per month | | |
| Other | $ _____ per month (describe:_____ ) | | |

10. Assets:

Automobile        $ _____        (FMV) _____

Checking/Savings Acct. $ _____

House          $ _____        (FMV) _____

Other          $ _____        Describe: _____

11. My debts are:

| Amount Owed | To Whom |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____